[Civ. No. 6187. Fourth Dist. Jan. 25, 1961.]

I. K. WISLEY et al., Respondents, v. CITY OF SAN DIEGO et al., Appellants.

[Civ. No. 6188. Fourth Dist. Jan. 25, 1961.]

HERBERT R. WOODWARD et al., Respondents, v. CITY OF SAN DIEGO et al., Appellants.

[Civ. No. 6189. Fourth Dist. Jan. 25, 1961.]

ALBIN E. WRIGHT et al., Respondents, v. CITY OF SAN DIEGO et al., Appellants.

[Civ. No. 6190. Fourth Dist. Jan. 25, 1961.]

R. H. WOODS et al., Respondents, v. CITY OF SAN DIEGO et al., Appellants.

[Civ. No. 6191. Fourth Dist. Jan. 25, 1961.]

HENRY ROBERT KLEIN et al., Respondents, v. CITY OF SAN DIEGO et al., Appellants.

[Civ. No. 6192. Fourth Dist. Jan. 25, 1961.]

MICHAEL E. DONNELLY et al., Respondents, v. CITY OF SAN DIEGO et al., Appellants.

J. F. DuPaul, City Attorney, Higgs, Fletcher & Mack and H. Pitts Mack for Appellants.

Kenneth Sperry for Respondents.

SHEA, J. pro tem.*—These are six consolidated cases involving pension rights of the plaintiffs. The Wisley and Woodward cases are actions by retired policemen and firemen to recover excess salary deductions. The Woods and Wright cases are actions by active members of the police and fire departments to recover excess salary deductions and to have a judicial declaration of their present and future pension rights. The Klein and Donnelly cases are actions by retired policemen and firemen to recover unpaid pension benefits as well as excess salary deductions.

The plaintiffs sought and recovered judgments on the ground that their pension rights became vested at the time they were employed by the city; that the amount each was required to contribute to the retirement fund was fixed at that time; and that various charter amendments which increased the percentage of salary deductions for pension purposes were illegal as applied to the plaintiffs.

In 1923 the then existing pension system of the city of San Diego was changed and policemen and firemen were required to contribute one per cent monthly by salary deduction into the pension fund. In 1931 the city of San Diego adopted a charter which made provision for pensions and increased the monthly salary deduction from 1 per cent to 2 per cent; by charter amendments in 1935 the deductions were increased from 2 per cent to 4 per cent; in 1945 from 4 per cent to 6 per cent; and in 1947 the amount was increased from 6 per cent to 8 per cent.

The trial court found that none of the amendments which increased the amount and percentage of the salary deductions was accompanied by the addition of any corresponding or commensurate advantages of any kind. The court concluded

---

*Assigned by Chairman of Judicial Council.

that the maximum amount that could legally be deducted from the employees' gross pay was that percentage which was in effect at the time each of the individual plaintiffs was originally employed. The court further concluded that the excess deductions were the result of a mutual mistake of fact; that the defendants were holding such excess in trust for each of the plaintiffs; and that the defendants are obligated to account to the plaintiffs for such sums plus interest. Interlocutory judgments were entered fixing the percentage of contribution each plaintiff was required to pay when he was first employed and directing the defendants to prepare and file a statement of account of the amounts that had been deducted in excess of that percentage.

In four of the cases the court also decreed that certain plaintiffs were entitled to a fluctuating pension rather than the fixed monthly pension they had been receiving and ordered an accounting for the difference. In the other two cases this had already been done in a prior action. With respect to the plaintiffs who had not yet retired, the court also gave a declaratory judgment defining their future pension rights.

The various accountings were subsequently made and money judgments were entered for each plaintiff for the amount of excess salary deductions plus interest. Judgments were also given for the recovery of unpaid pension benefits in the cases of those plaintiffs who were determined to be entitled to a fluctuating rather than a fixed pension.

The defendants have appealed from the entire judgment. However, the only point raised in the briefs is whether or not the increases in the percentage of salary deductions were reasonable and constitutional. The defendants contend that the plaintiffs had the burden of proving that the charter amendments which increased the amount and percentage of the salary deductions were unreasonable and unconstitutional and that, as a matter of law, the plaintiffs have not sustained their burden of proof.

Where a city charter provides for pensions, it is well settled that the pension rights of the employees are an integral part of the contract of employment and that these rights are vested at the time the employment is accepted. An amendment to the charter which attempts to take away or diminish these vested rights is an unconstitutional impairment of contract. However, this does not preclude reasonable modifications of the pension plan prior to the employees' retirement. Reasonable modifications are often necessary in order that the

pension system may be kept flexible, to permit adjustments in accord with changing conditions and to maintain the integrity of the system in order to carry out its beneficent purpose. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848 [179 P.2d 799].) ▮ To be sustained as reasonable, alterations of the employees' pension rights must bear some material relationship to the theory of a pension system and its successful operation, and changes which result in a disadvantage to the employees should be accompanied by comparable new advantages. (*Allen* v. *City of Long Beach,* 45 Cal.2d 128, 131 [287 P.2d 765].) ▮ The validity of attempted changes in vested pension rights depends upon the advantage or disadvantage to the individual employee whose rights are involved, and benefits to other employees cannot offset detriments imposed upon those whose pension rights have accrued. (*Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 453 [326 P.2d 484].)

It is obvious that the increase in the percentage of the employee's contribution to the retirement fund is a detriment, and it is undisputed in this case that by successive amendments these contributions were gradually increased from 1 per cent to 8 per cent. It thus becomes necessary to ascertain whether these detriments have been accompanied by commensurate benefits to the employees. While the defendants concede that the 1935 amendment did nothing more than increase the salary contribution from 2 per cent to 4 per cent and conferred no commensurate benefit to the employees, the defendants contend that through the years there has been a continual expansion of pension benefits for all employees and that these expanded benefits make the increases in salary contributions reasonable. In support of this contention, they have set forth an historical chronology of the changes that have been enacted in the San Diego pension system since its inception. This chronology is almost identical with the one that was considered by this court in *Abbott* v. *City of San Diego,* 165 Cal.App.2d 511 [332 P.2d 324]. In fact, a comparison of the briefs shows that, with a few minor exceptions, the chronology recited in this case is a verbatim repetition of the one set forth in the *Abbott* v. *City of San Diego* case. A description of the nature and extent of the statutory changes in the pension program is amply set forth in that case at pages 518 and 519, and it need not be repeated here. It will suffice to say that in *Abbott* v. *City of San Diego, supra,* this court held that in the recital of historical changes in the pension program it was not

shown that there was any actual benefit to any of the plaintiffs in that case, and that most of the alleged benefits had no factual relationship to the plaintiffs or their status. In that case this court also held that there was no showing that the amendments imposing the detriment therein involved bore any material relationship to the integrity or successful operation or to the preservation or protection of the pension program applicable to the plaintiffs.

The same holds true in the cases we now have under consideration. The defendants have not shown, nor have they attempted to show, that any of the alleged benefits were actually beneficial to any of the plaintiffs involved in these actions, and they have not shown that the amendments increasing the percentage of salary contributions were necessary to preserve the integrity or successful operation of the pension program. In the absence of such a showing, and in the light of the authorities hereinabove cited, it follows that the amendments in question imposed a detriment without a commensurate benefit and therefore cannot be sustained as reasonable as applied to the plaintiffs in these actions. The finding of the trial court in this regard was supported by the evidence and its judgment was in accord with the law.

A further point raised on this appeal concerns only one of the plaintiffs whose name is Willis. In the complaint it was alleged that Willis was employed by the city on May 7, 1941. This allegation was admitted by the defendants in their answer by the failure to deny it. The case was tried on January 16, 1958, and thereafter findings and conclusions were signed and an interlocutory judgment was entered on August 22, 1958. The findings and judgment were in accordance with the admitted fact that Willis had been employed on May 7, 1941. On January 30, 1959, the trial court granted a motion by the defendants to reopen the case for the purpose of taking evidence to show that Willis' employment was terminated in December 1941 and that he was reemployed in February 1942.

After the motion to reopen had been granted, it was stipulated by counsel for both parties that Willis commenced his employment on May 7, 1941, as a lifeguard. At that time lifeguards were considered to be members of the police department. It was further stipulated that Willis had paid into the retirement fund a percentage of his salary each month since his original employment in 1941, except for the period from December 11, 1941 to February 14, 1942; that his employment

as a lifeguard terminated on December 11, 1941; that he was reemployed on February 14, 1952, as a patrolman in the police department and has been a member of the police department since that time.

It appears from the joint statements of counsel, as contained in the reporter's transcript, that no contributions were deducted from Willis' salary during the time of his employment in 1941. It was stipulated that after his employment in 1942 an opinion was rendered by a deputy city attorney that Willis was entitled to retirement credit for the time he had served as a lifeguard, and that since he had started working for the city before May 8, 1941, he would be eligible for retirement in 20 years instead of 25 years. It was also stipulated that after receiving this opinion Willis retroactively made the salary contributions for the period during which he had been employed as a lifeguard.

After the foregoing stipulations had been presented to the court, the court ruled that the original date of Willis' employment was May 7, 1941, and that this date was controlling for the purpose of fixing the type of pension benefit that Willis is to receive.

On this appeal the defendants contend that the court erred in fixing May 7, 1941, as the effective date for the reason that Willis' employment was terminated in December 1941; that when he was reemployed as a patrolman in February 1942 a new contract of employment was entered into and his rights to receive a pension became vested at that time; and that since the charter, as amended, provided for a fixed pension, Willis, upon his retirement, should be entitled to a fixed pension rather than a fluctuating pension.

In reply, counsel for Willis contends, first, that it was admitted by the pleadings that the original date of employment was May 7, 1941, and that therefore the court could not find to the contrary; and, second, that even if the admission is disregarded, the facts as shown by the stipulations sustain the trial court's ruling. He argues that Willis did not resign, nor was he discharged; he was merely laid off temporarily due to the seasonal nature of the work that he was doing and he resumed work two months later.

The city of San Diego operates under a city charter which became effective in 1931. This charter was in effect on May 7, 1941, the date that Willis was first employed. The following day, May 8, 1941, is the effective date of a charter amendment that made certain changes in the retirement program. It changed the requirement with regard to time in service from

20 years in the aggregate to 25 years in the aggregate. It also changed the pension benefits from a fluctuating to a fixed pension.

 This court is obliged to take judicial notice of a city charter. (*Sobo* v. *Board of Police Commissioners,* 145 Cal. App.2d 783 [303 P.2d 104].) Article VIII of this charter provides for the establishment of civil service in the city of San Diego, and it requires the civil service commission to adopt rules for the classified service of all employees. (There are certain exceptions which are not pertinent here.) The civil service rules required by the charter were not offered in evidence; but, under the general rule that an official duty is presumed to have been regularly performed (Code Civ. Proc., § 1963), for the purposes of this case, we must assume that civil service rules were adopted in accordance with the mandate of the charter.

Section 118(j) of the charter requires that a rule shall be adopted to provide for ". . . immediate reinstatement within one year of persons who, without fault or delinquency on their part, are separated from the service . . . ."

The charter also requires the adoption of rules to the effect that all employees must be selected from eligible lists except in the case of temporary employment, and temporary employment is specifically limited to not more than 60 days. (§§ 118(h), 118(i).) Under this state of the record we must conclude that since Willis' employment as a lifeguard continued for over seven months, he could not be considered to be a temporary employee. He must therefore be considered as having achieved permanent status as a civil service employee and, since the record negates any fault or delinquency on his part, under section 118(j), it seems clear that he had a right to be reinstated in the police department within one year after his separation from the service. The fact that he was re-employed two months later indicates that he was accorded this right. This being the case, the trial court properly found that the date of his original employment (May 7, 1941) is controlling, and that his pension rights were fixed as of that date. The court properly concluded that Mr. Willis is entitled to a fluctuating rather than a fixed pension.

The judgments are affirmed.

Shepard, Acting P. J., and Coughlin, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied March 22, 1961. Peters, J., was of the opinion that the petitions should be granted.