[Civ. No. 25188. Second Dist., Div. Four. Mar. 14, 1962.]

EDWARD G. HENRY, Plaintiff and Respondent, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

[Civ. No. 25189. Second Dist., Div. Four. Mar. 14, 1962.]

JOHN L. ACKER et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

[Civ. No. 25190. Second Dist., Div. Four. Mar. 14, 1962.]

BERT K. AHRENS et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

[Civ. No. 25191. Second Dist., Div. Four. Mar. 14, 1962.]

AUSTIN H. CASSELBERRY et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

[Civ. No. 25192. Second Dist., Div. Four. Mar. 14, 1962.]

GLENN M. ARMSTRONG et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

Kenneth Sperry and John L. Kaesman for Plaintiffs and Appellants and Plaintiff and Respondent in Civ. No. 25188.

Bewley, Knoop, Lassleben & Whelan, Martin E. Whelan, Jr., Ball, Hunt & Hart and Joseph A. Ball, as Amici Curiae on behalf of Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and John J. Tully, Jr., Assistant City Attorneys, and Weldon L. Weber, Deputy City Attorney, for Defendants and Appellants.

BURKE, P. J.—In these five companion cases, consolidated for trial, plaintiffs, retired fire and police department pensioners or widows of pensioners, appeal from those portions of the various judgments which are adverse to them, and the defendants, City of Los Angeles and its board of pension commissioners, appeal from certain portions of the judgments adverse to such defendants.

In *Abbott* v. *City of Los Angeles*, 50 Cal.2d 438 [326 P.2d 484] (hereinafter termed *"Abbott"*), the Supreme Court, determined that retired members of Los Angeles fire and police departments who were first employed prior to July 1, 1925, were entitled to fluctuating pensions (i.e., based upon salaries currently being paid) rather than fixed amounts determined at the time the pension is granted. It was also determined that widows of members employed prior to January 17, 1927,

were entitled to fluctuating pensions. The court determined that Los Angeles city charter amendments adopted in 1925 (Stats. 1925, p. 1085) and 1927 (Stats. 1927, pp. 2023-2024), by which fixed payment pensions were substituted for fluctuating pensions, could not properly be applied to the plaintiffs in that case. It held that such charter amendments were detrimental and hence invalid as applied to the partially earned pension rights of various members of such departments who were employed prior to the effective date thereof.

In three of the cases now before us, *Acker* v. *City of Los Angeles* (hereinafter termed *"Acker"*), *Casselberry* v. *City of Los Angeles* (hereinafter termed *"Casselberry"*) and *Ahrens* v. *City of Los Angeles* (hereinafter termed *"Ahrens"*), the plaintiffs are retired members of the Los Angeles Police or Fire Department, or widows of deceased members, who were employed prior to the 1925 and 1927 changes in the pension system. By their complaint they sought a declaratory judgment to determine the nature and extent of their respective pension rights and to recover the difference between the fluctuating monthly pension based upon the current salaries and the fixed monthly pension based upon salaries received prior to retirement, which had been paid by the defendants from the retirement fund of the city, for the three-year period preceding the filing of the complaint.

Plaintiffs further contended that defendants were estopped "to rely upon the failure of any party plaintiff to file a claim with the City Clerk pursuant to the provisions of Sections 363 and 376 of the City Charter of the City of Los Angeles as an excuse for their failure to pay those unpaid pension benefits which accrued within three years prior to the . . ." filing of their respective claims.

In its decision and judgment in each of these three cases (*Acker, Casselberry* and *Ahrens*) the trial court determined the 1925 and 1927 amendments to the pension system were unconstitutional and invalid insofar as they purported to deprive any party plaintiff of his or her right to receive a fluctuating pension in accordance with the terms of article XI½ of the city charter of 1889, as amended (Stats. 1923, pp. 1412-1414), and each party plaintiff had been, since the granting of his or her pension, and would in the future be ". . . legally entitled to receive from the defendant city . . ." a fluctuating retirement, disability or death benefit pension in accordance with the terms and conditions of article XI½ of the charter of 1889 as amended.

The court further found neither of plaintiffs' named causes of action is barred by the provisions of sections 363 or 376 of the Charter of the City of Los Angeles, ". . . but that the right of each party plaintiff to recover herein any unpaid pension benefits which accrued or became payable to such plaintiff more than six months prior to the time that a specific claim for such fluctuating pension was filed by or in behalf of each such party plaintiff is barred by the provisions of said Charter sections." No appeal has been taken by either party from those portions of the judgment which determined that plaintiffs were entitled to receive the fluctuating pension, excepting with reference to the *Ahrens* case wherein the defendants have appealed from the whole and every portion of the judgment therein. Plaintiffs' appeals in these cases (*Acker, Ahrens* and *Casselberry*) are from that portion of the judgment which limited their recovery on account of past-due pension benefits to those which accrued within six months prior to the filing of their respective claims. The defendants have appealed from certain other portions of the declaratory judgment which defined the future pension rights of the surviving spouses of the various member plaintiffs, in addition to the appeal mentioned in the *Ahrens* case.

Subsequent to the decision in the *Abbott* case in 1958, the defendants placed all of the plaintiffs in the *Acker* and *Casselberry* cases upon fluctuating pensions and paid to each of them the difference between the amount of such pension and the amount of the fixed pension which each had theretofore been paid back to six months prior to the filing of a claim therefor, excluding from the calculations thereof only "longevity pay" and "merit pay."

Plaintiffs rely on appeal upon certain conduct (as found by the trial court and herein summarized) of the defendants (the City of Los Angeles and its board of pension commissioners) to establish an estoppel: (a) preparation and furnishing of forms; (b) furnishing of notarial services and pick-up service where retired pensioner was ill; (c) assistance in preparing forms; (d) notice sent by the defendants on July 1, 1958, following the decision in the *Abbott* case, to all claimants advising they would have to file claims under the charter provisions.

It should be emphasized here that prior to the *Abbott* decision in June 1958, the city was paying *fixed pensions* in accordance with the 1925 and 1927 charter amendments. Neither the city nor the board of pension commissioners can

be criticized or accused of any misconduct in following the charter provisions and what was believed to be the law. While others may challenge the constitutionality or validity of the charter provisions, certainly the city itself and its departments were not in a position to do so. The trial court here specifically found that the city acted in good faith in that shortly after the decision in the *Abbott* case "the defendant pension board mailed a written notice of the decision to each plaintiff" and that at all times prior to the rendition of the decision "the defendants were of the opinion and belief that each party plaintiff was being paid the full amount of pension benefits to which each was legally entitled, and so represented to each party plaintiff."

In *People* v. *Watkins*, 175 Cal.App.2d 182, 185 [345 P.2d 960], the court said: "It is well settled that the existence of an estoppel is a question of fact for the trial court, and ordinarily its decision that an estoppel has not been made out is binding on appeal, 'unless the opposite conclusion is the only one which can reasonably be drawn from the facts. . . .' "

The elements of equitable estoppel have been established in many decisions of which the case of *California Cigarette Concessions, Inc.* v. *City of Los Angeles,* 53 Cal.2d 865 [3 Cal. Rptr. 675, 350 P.2d 715], is a good example. ▮ Therein, at page 869, the court stated: "We are of the opinion that as a matter of law, the stated facts are insufficient to create an estoppel on the defendant city to rely on the statute of limitations. . . .

"Certain conditions are necessary as the basis for an estoppel: the party to be estopped must be apprised of the facts; . . . the party to be estopped must have intended that its conduct be acted upon, or so act that the other party had a right to believe that it was so intended; and the other party must rely on the conduct to its prejudice. (*Safway Steel Products, Inc.* v. *Lefever,* 117 Cal.App.2d 489, 491 [256 P.2d 32].)"

In *Martin* v. *Alcoholic Bev. etc. Appeals Board,* 52 Cal.2d 287 [341 P.2d 296], the court says at pages 292-293: "One of the essential elements of estoppel is that the person to be estopped must be advised of the facts. (18 Cal.Jur.2d, § 5, p. 406.) Moreover, the principles of equitable estoppel are not ordinarily applied to deprive the public of the protection of a statute because of the mistaken action on the part of a public official or employee. (*Jacques, Inc.* v. *State Bd. of Equalization,* 155 Cal.App.2d 448, 462 [318 P.2d 6]; also

*County of San Diego* v. *California Water & Tel. Co.,* 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747].)''

In *Peck* v. *City of Modesto,* 181 Cal.App.2d 465 [5 Cal. Rptr. 482], the court held that as a matter of law the facts as alleged in the amended complaint are insufficient to estop the city from relying upon section 53052 of the Government Code. The court said, at page 468: ''In the instant case the amended complaint as grounds for estoppel merely alleges that the appellant relied upon the provisions of section 1312 of the city charter in presenting and filing her unverified claim with the city. There is no claim by appellant of any affirmative act on the part of the city that induced her to rely solely upon the charter provision.''

In *Crothers* v. *General Petr. Corp.,* 131 Cal.App. 2d 98 [280 P.2d 182], the court comments on the elements necessary to establish an estoppel as follows (p. 105): '' 'In order to constitute an estoppel it must be shown that there was an intentional and deliberate declaration, act, or omission on the part of the party sought to be estopped. There must be an intentional deceit or gross negligence shown (*Lackmann* v. *Kearney,* 142 Cal. 112 [75 P. 668]), and if silence is relied upon to constitute the estoppel, such silence must be wilful or culpable and result in another placing himself in an unfavorable position on the faith in or understanding of a fact which the person remaining silent can contradict.' ''

In *Benson* v. *Andrews,* 138 Cal.App.2d 123, 138 [292 P.2d 389], the court comments on the factors involved in equitable estoppel as follows: ''The manifold cases passing on the law of equitable estoppel have established the following factors as the principal elements of this doctrine: (1) there must be acts or conduct on the part of the party to be estopped which amount to a representation or concealment of material facts made either with knowledge or culpable negligence; (2) he must intend that his conduct shall be acted upon or must so act as to cause the other party reasonably to believe it was so intended; (3) the other party must be ignorant of the true situation; and (4) he must rely upon that conduct to his prejudice or injury.'' See also *Banco Mercantil* v. *Sauls, Inc.,* 140 Cal.App.2d 316 [295 P.2d 55]; *Lusitanian-American Development Co.* v. *Seaboard Dairy Credit Corp.,* 1 Cal.2d 121, 128 [34 P.2d 139]; *Safway Steel Products, Inc.* v. *Lefever,* 117 Cal.App.2d 489, 491 [256 P.2d 32]; *Bank of America* v. *Pacific Ready-Cut Homes,* 122 Cal.App. 554, 561 [10 P.2d

478]; *General Motors Accept. Corp.* v. *Gandy,* 200 Cal. 284, 297 [253 P. 137].

Insofar as section 1962, subdivision 3 of the Code of Civil Procedure establishes the rule of estoppel, it will be noted that it refers to a declaration, act or omission of a party which intentionally and deliberately leads another to believe a particular thing true. In the instant case the trial court found the defendants acted in good faith and so the elements specified in section 1962 of intentional deliberate conduct were missing.

In the instant cases, there was undoubtedly a mutual mistake of law. ▮ On this point, the court in *Gilbert* v. *City of Martinez,* 152 Cal.App.2d 374 [313 P.2d 139], says at page 378: "When the parties to a transaction labor under a mutual mistake of law, 'acts performed in reliance upon such mutual mistake do not, as a matter of law, create an estoppel.' (*Boericke* v. *Weise,* 68 Cal.App.2d 407, 418 [156 P.2d 781].) "

▮ We find that the doctrine of equitable estoppel is not applicable to the instant cases for the following reasons:

(1) There was no *misrepresentation* or *concealment* of material facts by the city or its pension board. Here the trial court found that the city acted in good faith and at all times defendants believed plaintiffs were paid the full amount of pension benefits to which they were entitled.

(2) Immediately upon the *Abbott* case being decided by the Supreme Court, all plaintiffs were advised by the defendants of the decision and the fact claims would have to be filed by all pension claimants as to past pension benefits (not as to future benefits).

(3) The *Abbott* decision established the law as to pension benefits for both parties. The defendants cannot be charged as though they had knowledge of such decision prior to its rendition in order to make the conduct of defendants misleading or improper. Defendants at all times prior to the decision thought they were following the law.

(4) The *Abbott* decision should fall equally upon all parties. If the defendants are charged with knowledge prior to the decision that fluctuating pensions were payable, then plaintiffs were chargeable with the knowledge prior to the decision that claims under section 376 of the charter should be filed. It is not logical to hold the defendants have to act in accordance with the decision prior to its rendition but plaintiffs do not.

(5) The furnishing of forms, the assistance in preparation

of forms, the furnishing of notarial services and pick-up assistance and similar conduct by the defendants have nothing to do with the necessity of plaintiffs filing claims. There is no misrepresentation or concealment here. Prior to the *Abbott* decision, neither plaintiffs nor defendants knew fluctuating pensions were payable or that claims for such benefits would have to be filed. A thing cannot be misrepresented if one does not know it exists.

(6) There was no superior knowledge of the law by the city or the board. A mere reading of the *Abbott* decision (50 Cal.2d 438) is enough to show the litigation was actively prosecuted and defended by the parties thereto and it seems obvious prior to the decision there was no superior knowledge on the part of the city.

(7) The sending out of the notice dated July 1, 1958, advising all pension claimants of the *Abbott* decision and also that it would be necessary to file claims for any post pension benefits under the sections of the charter is said to be paternalistic. "Paternalistic" is defined in Webster's Third New International Dictionary as relating to, or practicing paternalism. The latter is defined in part as "the care or control of subordinates (as by a government or employer) in a fatherly manner; . . ." Assuming the attitude and conduct of the employer city and its board toward its pensioners to have been paternalistic, such an attitude is entirely in keeping with the basic contractual relationship of employer and employee. Such an attitude falls far short of establishing a basis for the application of the doctrine of equitable estoppel. The sending out of the notice by the city to its pensioner claimants advising of the necessity of filing claims is nothing more than a further example of a deep interest by an employer in its retired employee.

Further, only conduct *before* the *Abbott* case is material on the issue of estoppel. Conduct occurring after the *Abbott* decision cannot be material in any way to show that plaintiffs were misled in not filing claims prior to the decision. The usual case for contending that estoppel is applicable is where plaintiff is advised by defendant it is unnecessary to file a claim and then later defendant takes the legal position a claim should have been filed. This is the exact opposite of the conduct of defendants by sending their notices in the instant case.

(8) The relationship here was essentially contractual. The *Abbott* case itself is bottomed squarely upon the vesting of certain contractual rights. The fact that a city, in the proper

and efficient administration of a pension system, furnishes and prepares forms and assists claimants in filling them out properly, is not indicative of a confidential relationship. The city owed a duty to its taxpayers to see that all forms for pension claims are properly and truthfully made out and certified to by the oath of the claimant.

(9) Plaintiffs assert that it is well settled that a misrepresentation with respect to a matter of law will be treated as a mistake of fact where a confidential or fiduciary relationship exists or where the party making the representation has a superior means of information and possesses a knowledge of the law and thereby gains an unconscionable advantage of another who is ignorant and has not been in a situation to become informed.

However, none of the above elements is present here:

(a) There was no *misrepresentation of law* because prior to the *Abbott* case the defendants simply advised claimants what the charter provisions, as amended, contained.

(b) There is no confidential or fiduciary relationship here. There is no finding by the trial court of any such relationship.

(c) It has already been pointed out the city and the board had no *superior knowledge* of the law.

(d) There is, of course, no unconscionable advantage here. The defendants acted in good faith, as found by the trial court, and the two are completely antagonistic.

The cases cited on the point of mutual mistake of law are not in point here because they are based on the elements above mentioned which are completely absent in the instant case.

The case of *Tyra* v. *Board of Police etc. Comrs.*, 32 Cal.2d 666 [197 P.2d 710], principally relied upon by plaintiffs for the application of estoppel, and hereinafter referred to as the *Tyra* case, is distinguishable from the cases here.

In that case, the plaintiff sought a writ directing the police and fire commissioners to order his retirement on a pension by reason of a service-connected injury. The trial court held the action was barred by the three-year statute of limitations.

In its opinion in the *Tyra* case (32 Cal.2d 666 [197 P.2d 710]), the Supreme Court first notes that plaintiff pleaded the elements of estoppel to bar defendant from interposing the defense of the statute of limitations. Defendant's attorneys had incorrectly advised plaintiff that so long as he was receiving workmen's compensation benefits he was not entitled to a pension. He was advised that he could not have both,

and that benefits under the compensation act were "in lieu of and in place of the benefits provided in section 187 of the Charter."

Before distinguishing the *Tyra* case it should be noted that the comments regarding the application of estoppel are dicta. The real issue in the case was whether the action for pension benefits was barred by the statute of limitations. The trial court held the statute began to run when plaintiff filed his application with the Industrial Accident Commission for an award based on total permanent disability on November 30, 1937, and the action filed here was on August 26, 1942, more than three years after the statute started to run. However, the holding in the *Tyra* case is that the statute does not commence to run until there is a determination that the employee is so disabled as to necessitate retirement. Since it found that such determination was within the three year statute the discussion concerning estoppel was unnecessary for the decision and is dicta.

Further, even treating the estoppel discussion as pertinent, the *Tyra* case (*supra,* 32 Cal.2d 666) is not in point and may be distinguished upon the following grounds:

(1) In the *Tyra* case there was evidence of direct affirmative legal advice by the defendants to the plaintiff. In the instant cases there was no legal advice whatsoever given to the plaintiffs about the matter of filing claims.

(2) In the *Tyra* case, the attorneys advised plaintiff directly contrary to the express wording of the charter. In the instant cases, defendants acted (not advised) exactly in accordance with the charter. It is true that subsequently the Supreme Court found the 1925 and 1927 charter amendments unconstitutional. However, there is a great difference between proceeding contrary to and in violation of a statute or charter, and in proceeding under and in conformity to a charter provision which some 30 years later is determined by a court to be unconstitutional as to particular classes of employees.

(3) The two cases cited in the estoppel discussion in the *Tyra* opinion, *Farrell* v. *County of Placer,* 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323], and *Benner* v. *Industrial Acc. Com.,* 26 Cal.2d 346 [159 P.2d 24], emphasize the essential difference from the case at bar. In the *Farrell* case, the action was against certain counties to recover damages arising out of an automobile accident allegedly caused by the dangerous

and defective condition of a bridge. A demurrer was sustained to the complaint and judgment of dismissal entered on the basis plaintiff's complaint showed a late filing of the claim. The court held the facts (as alleged) clearly established that defendants should be estopped to complain of the late filing of the claim. The conduct of defendants in affirmatively and directly advising plaintiff not to employ counsel and that it would be satisfactory to wait and see the extent of the injuries before making the claim, which plaintiff believed and relied upon, is far different from any conduct in the present cases.

Similarly, in the *Benner* case (*supra*, 26 Cal.2d 346), the court held that the employer and its insurance carrier could not escape the consequences of their acts or conduct to procure delay for purposes of settlement, or investigation or otherwise, upon which the employee has relied and by which he has been induced to delay the filing of a claim until after the expiration of the statutory period. Such conduct, so relied upon, the court held, becomes the basis of an estoppel against the party responsible for the delay and precludes the bar of the statute of limitations.

We concur in the trial court's conclusion that defendants are not estopped to assert that the right of each party plaintiff to recover is limited by the claims provisions of the charter to any unpaid pension benefits which accrued or became payable to such plaintiff not more than six months prior to the time that a specific claim for such fluctuating pension was filed by or in behalf of each such party plaintiff.

We now turn to consideration of the cross appeals by the city in the *Acker* and *Casselberry* cases. In these appeals the defendants contend that the trial court erred in determining and adjudging that the July 1, 1925, modification of the provisions for widows' pensions was and is unreasonable, unconstitutional and invalid. Prior to July 1, 1925, section 4 of article XI½ of the 1889 charter of the city provided ". . . that no widow of a pensioner shall be entitled to a pension unless she shall have been married to such deceased pensioner at least one year prior to the date of his death." (Stats. 1923, pp. 1411-1414.) Effective as of July 1, 1925, this provision was amended by the enactment of section 183 of the 1925 charter to read, ". . . that no widow of a pensioner shall be entitled to a pension unless she shall have been married to such deceased pensioner at least one year prior to the date of his retirement." (Stats. 1925, pp. 1085-1088.)

The trial court decided this modification was and is unreasonable, unconstitutional and invalid and that the surviving spouse, if any, of each plaintiff in the *Acker* and *Casselberry* cases to whom she shall have been married for at least one year will be entitled to a pension upon the death of the pensioner. Defendants conceded at the trial the widows of any such plaintiffs will be entitled to a fluctuating pension upon his death if she shall have been married to him at least one year prior to his retirement. Defendants contend, however, no widow of any such plaintiff will be entitled to any pension upon his death if she shall have been married to him at any time later than one year before his retirement, regardless of the length of any such marriage.

It is true that a widow's pension right, prior to her husband's death, is a mere inchoate expectancy (*Sweesy* v. *Los Angeles etc. Retirement Board,* 17 Cal.2d 356, 362 [110 P.2d 37]) and is not such a vested right that reasonable modification of the benefits cannot be made prior to their becoming vested. In the *Abbott* case (p. 449) it was held that the plaintiff members and husbands of widow plaintiffs therein had rights which were earned and vested in the retirement benefits already provided by the city charter during the times that they had rendered service and prior to the amendments in question.

The defendants content that the holding in the *Abbott* case has no application to the prospective widows, if any, involved in the *Acker* and *Casselberry* cases for the "very obvious reason that vested rights are not involved." However, our courts have repeatedly held the widow's right to receive a pension following the demise of her husband is purely a derivative right and is not dependent upon any separate contract between herself and the defendant city. On the contrary, it is an element of the husband's contractual compensation and earned by him by performing services for the city. (*Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d 438, 455; *Packer* v. *Board of Retirement,* 35 Cal.2d 212, 215-216 [217 P.2d 660]; *Abbott* v. *City of San Diego,* 165 Cal.App.2d 511, 525 [332 P.2d 324]; *Malone* v. *City of Los Angeles,* 126 Cal. App.2d 447, 451 [272 P.2d 796]; *English* v. *City of Long Beach,* 126 Cal.App.2d 414 [272 P.2d 875]; *Filian* v. *City of Long Beach,* 109 Cal.App.2d 611 [241 P.2d 56].)

While the Supreme Court in the *Abbott* case held (p. 454) the 1927 amendment (by which widows' pensions were

changed from a fluctuating to a fixed basis) was not intended
to apply to the widows of pensioners any more than the
changes from a fluctuating to a fixed pension were applicable
to firemen and policemen, who retired after the 1927 amend-
ment, the case does not construe the effect of the 1925 amend-
ment referred to above that no widow of a pensioner shall be
entitled to a pension unless she shall have been married to
such deceased pensioner at least one year prior to the date
of his retirement. At the same time the court reaffirmed its
holding in *Allen* v. *City of Long Beach,* 45 Cal.2d 128, 131
[287 P.2d 765], that an employee's vested contractual pension
rights may be modified prior to retirement for the purpose
of keeping a pension system flexible to permit adjustments in
accord with changing conditions and at the same time main-
tain the integrity of the system. The court stated: ''Such
modifications must be reasonable, and it is *for the courts to
determine upon the facts* of each case what constitutes a per-
missible change. To be sustained as reasonable, alterations of
employees' pension rights must bear some material relation to
the theory of a pension system and its successful operation,
and changes in a pension plan which result in disadvantage to
employees should be accompanied by comparable new ad-
vantages.'' (Emphasis added.)

It thus becomes incumbent upon the court to con-
strue the changes made in the pension system of the city by
the amendments or additions of 1925. The basic change was
the attempted one from a fluctuating to a fixed pension which
the court in the *Abbott* case declared to be ineffective inso-
far as it affected those persons who had been employed prior
to the adoption of the charter change in 1925. Widows'
pension rights were not mentioned in the new section 184
added in 1925 wherein the change to fixed pensions was at-
tempted, and pension benefits for such widows continued upon
a fluctuating basis until January 1927, when by amendment
the section was enlarged to include pension benefits of widows
and other members of families of deceased employees. As
we have noted, this 1927 amendment was also held in the
*Abbott* case to have been void as to employees, or their
widows, employed prior to such amendment.

It is quite apparent the benefit to a fireman or policeman
of being able to protect his widow with a pension irrespective
of when his marriage to her occurred, provided, of course,
it occurred at least one year prior to his death, is a substantial

benefit which the 1925 amendment sought to curtail very sharply by requiring that such pensioner must have been married to such person at least one year prior to his retirement. This was a disadvantage to such employees and we find that it was not accompanied by comparable new advantages. Had new advantages commensurate with the disadvantage been added by the 1925 amendment, then the rule announced in *Packer* v. *Board of Retirement*, 35 Cal.2d 212 [217 P.2d 660], would have been applicable. In the latter case the 1941 amendment to the county peace officers retirement law was held by the court to have embraced both advantages and disadvantages to county peace officers and that the 1941 revision did not exceed the scope of a permissible modification. In 1937 the retirement law had been amended to extend pension rights to the widow or children of any peace officer who died after retirement. By one of the 1941 amendments it was provided that an officer might obtain a pension for his widow by exercising an option to take a lesser pension for himself during his life, but all other provisions for widows' pension benefits were eliminated except where the officer died as a result of a service-connected disability or was retired for such a cause. The plaintiff widow in the *Packer* case (*Packer* v. *Board of Retirement, supra,* 35 Cal.2d 212) would have been entitled to a pension under the 1937 law but that right was eliminated through the effect of the 1941 amendment, her officer husband not having exercised his option to take a lesser pension during his life and thereby provide a pension for his widow.

In the cases before this court, having found no comparable benefits to have been added by the 1925 amendment, we affirm the trial court's findings that the 1925 modification of the provisions for widows' pension benefits was and is unreasonable, unconstitutional and invalid as applied to the plaintiffs in both the *Acker* and *Casselberry* cases.

We have for consideration the appeal by the city from the judgment in the *Ahrens* case. The plaintiffs in this case fall into two categories each of which seeks to establish the right to a fluctuating monthly pension in accordance with charter provisions in existence prior to 1925 and 1927, plus such additional disability or minor children benefits as were later provided by 1927 (Stats. 1927, pp. 2020-2026) and 1947 (Stats. 1947, pp. 3679-3687) amendments to the city charter: (1) members of the police or fire departments of the city

who were appointed thereto prior to July 1, 1925, and who subsequently were retired on disability pensions on account of service-connected injuries; and (2) widows of deceased members of such departments, which members were appointed thereto prior to January 17, 1927, and subsequently were retired on disability pensions on account of service-connected injuries. These widows were granted pensions subsequent to January 17, 1927, effective upon the deaths of their respective husbands.

In its judgment in the *Ahrens* case the trial court held: (1) all plaintiffs were entitled to a fluctuating pension and any change in the charter in 1925, 1927 or 1947 which purports to substitute a fixed pension therefor has resulted in a substantial detriment to each party plaintiff which has not been offset by the addition of any commensurate advantages and each and all of such changes are and were unreasonable, unconstitutional and invalid as applied to each party plaintiff; (2) in addition to the 50 per cent fluctuating disability pension, plaintiff members are and were entitled to additional fixed monthly pension payments equal to that percentage in excess of 50 per cent which may be granted to disabled members by virtue of the 1927 and 1947 amendments to section 182 of the city charter. The 1927 changes provided, among other things, that the one-half service-connected disability pension theretofore provided for was changed to one ranging from 10 per cent to 90 per cent of such salary. In 1947 this range was changed to not less than 50 per cent nor more than 90 per cent of such salary. In addition, by the 1927 changes the 50 per cent widow's pension was increased by 25 per cent for one minor child, by 40 per cent for two minor children and by 50 per cent for three or more minor children; and (3) a widow who was married to a deceased member for at least one year prior to the date of his death (instead of prior to retirement) is entitled to receive a 50 per cent fluctuating pension plus the additional fixed benefits as added in 1927 where there are minor children.

The trial court held invalid and unconstitutional the 1925 amendment which required a widow to be married to a deceased pensioner at least one year prior to the date of his retirement. This latter contention we have discussed previously and for the reasons indicated hold the trial court's conclusions were correct.

The defendants contend, since plaintiffs applied for, accepted and retained for some years the greater benefits of

the fixed pension, including the disability pensions and the widows' and minor children's benefits, rather than the lesser benefits which each would have received under the fluctuating pension, they are not now entitled to fluctuating pensions. Stated differently, defendants contend the benefits provided by the 1927 amendment and enjoyed by these particular plaintiffs are commensurate with any disadvantages resulting from the change from fluctuating to fixed pensions in 1925 and 1927. They assert that in any event plaintiffs must choose between fluctuating pensions without additional benefit and fixed pensions plus additional benefits.

In this particular case (*Ahrens*) we are dealing exclusively with members of the fire and police department who were retired on disability pensions on account of service-connected injuries or with the widows of deceased members of the police or fire departments who died subsequent to their retirement on such disability pensions. The acceptance by these disabled pensioners or their widows and dependent children of additional benefits accorded them by subsequent charter amendments should in no way preclude them from receiving the benefits of a fluctuating rather than a fixed pension. These added benefits which are applicable to some pensioners and not to all are in no way commensurate with the detriment which would be suffered by these groups of pensioners were they required to accept fixed rather than fluctuating pensions. We hold that these plaintiffs are entitled to fluctuating pensions and to the additional benefits conferred by the 1927 and 1947 amendments to the city charter.

Finally, in the *Ahrens* case defendants contend that plaintiff Merle B. Swan had a "break" in his period of service, that he was not duly and regularly appointed as a police officer of the city until September 1, 1925, which was subsequent to the charter change on July 1, 1925, and consequently it was error for the court to award him a fluctuating pension. The trial court found Officer Swan had served regularly as a member of the police department from the date of his appointment in October of 1924 until the time of his service-connected disability retirement in June of 1941. Defendants submit the court was in error because of certain documentary evidence which they assert establishes Officer Swan was terminated as an emergency policeman on June 29, 1925; that he was appointed as a regular policeman on September 1, 1925, and he was not on the payroll of the department between these

dates. Certain testimony was introduced and considered by the court to the effect there was no break in Mr. Swan's service and he was paid during the period from June 29, 1925, to September 1, 1925, through a secret service fund of the city but for services rendered to the police department. The evidence is in conflict; however, since there is substantial evidence to support the finding of the trial court, it will not be disturbed by this court.

Defendants assert Swan was not entitled to a fluctuating pension in any event because he did not become a member of the fire and police pension system until September 1, 1925, which was after the change from fluctuating to fixed pensions had taken effect on July 1, 1925, and therefore the change was valid and constitutional as to him.

Section 5, article XI½ of the 1889 charter, as it existed prior to July 1, 1925, provided in part the fire department shall consist of all persons "duly and regularly appointed" in such department under civil service rules and regulations "whose duty it is to prevent or extinguish fires in the City of Los Angeles under whatever designation they may be described in any salary or departmental ordinance providing compensation for said fire department"; and, similarly, with respect to the police department it shall consist of all members of such department "appointed under civil service rules and regulations and sworn in, as provided by law, to perform the duties of a regular police officer of the city. . . ." Defendants maintain these definitions rule out Officer Swan because he did not become a police officer until he received his "regular" appointment.

Officer Swan, after his appointment as an emergency policeman in 1924, received a service-connected gunshot wound which required him to be hospitalized. After he left the hospital he was assigned to duty at the police garage and thereafter as driver for the chief of police. Subsequently he and one other officer were assigned by the chief to the Better Business Bureau to handle certain complaints during all of which time he continued to receive compensation from the city. His employment as an emergency police officer was continued due to his inability to complete the required examinations for regular employment because of the service-connected injuries that he received. Such emergency appointments were expressly authorized by the city charter. It was stipulated if the secretary-manager of the pension board were recalled to the stand he would testify that throughout the

period of his service in that capacity (1924 through 1938), in computing the period of service for retirement purposes, the applicant was customarily given credit for time served by him during such temporary or emergency appointments, and salary deductions were customarily taken from the salary of such employees during such appointments and paid into the pension fund. A succeeding secretary-manager likewise would have testified, it was stipulated, similar treatment was accorded such temporary or emergency appointees throughout the period from 1938 to January of 1958.

 The principle is well settled that the contemporaneous construction of a statute as adopted by those charged with the administration thereof is entitled to great weight in arriving at the proper construction to be placed thereon. (*In re Parker's Adoption,* 31 Cal.2d 608 [191 P.2d 420]; *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634 [122 P.2d 526]; *Paramount Citrus Assn.* v. *Jacobsen,* 162 Cal.App.2d 147 [328 P.2d 14].)

 We believe the contention of plaintiff is sound that the framers of the city charter in using the phrase ''appointed under civil service rules and regulations and sworn in, as provided by law, to perform the duties of a regular police officer of the city . . .'' were merely using language which was aimed at restricting the benefits of the pension system to those members of the department who were subjected to the usual hazards of police work as distinguished from numerous other employees of the department who perform purely clerical work. The fact that during Officer Swan's emergency appointment he sustained a serious gunshot wound while acting as a policeman is indicative of the fact he was one of the persons whom the framers of the charter intended to protect, and certainly the rule of liberal construction should be accorded in such instances. (*Wendland* v. *County of Alameda,* 46 Cal.2d 786 [298 P.2d 863]; *Lesem* v. *Board of Retirement,* 183 Cal.App.2d 289 [6 Cal.Rptr. 608].) We affirm the trial court in its conclusion that Officer Swan is entitled to have his pension computed on the fluctuating basis.

 In the *Armstrong* case the plaintiffs fit into three groups: (1) pensioners who were appointed to positions in the fire or police department of the city prior to July 1, 1925, and who resigned therefrom and were reappointed subsequent thereto; (2) widows of deceased firemen or policemen of the city who had been appointees to such positions prior to Janu-

ary 17, 1927, and who resigned therefrom and were reappointed subsequent thereto; and (3) plaintiffs who were appointed to such positions upon the consolidation of the city of Venice or the city of Watts with the city of Los Angeles, which consolidations took place subsequent to July 1, 1925, hereafter referred to as the "Watts appointees" or "Venice appointees."

In the case of *Abbott* v. *City of Los Angeles*, 178 Cal.App. 2d 204 [3 Cal.Rptr. 127] (hereinafter termed the "second *Abbott* case"), this court determined certain plaintiffs (in the related cases of *Abney* v. *City of Los Angeles* and *Behrens* v. *City of Los Angeles*) who had breaks in service or who were Venice appointees were not entitled to the fluctuating pensions which were provided prior to July 1, 1925, but were entitled to the fixed pensions which were provided for effective as of that date.

In the second *Abbott* case the court stated (page 209): "It is clear that the 12 resigned members lost their right to receive a fluctuating pension by reason of their resignations. The voluntary resignation of a municipal employe terminates all rights and duties of his employment and upon a rehiring he enters into a new contract with his employer. [Citing cases.] Although the members had a vested right to a fluctuating pension by virtue of their original contracts of employment they lost it by quitting their positions before completion of the period of service necessary to qualify them for retirement. [Citing cases.] The rule is manifestly a fair one. . . . It is also clear that the three former Venice employes acquired no pension rights from the city of Los Angeles before the change to a fixed pension plan and that their right to receive a pension is governed by the charter provisions in effect at the time of their employment by defendant."

The rule of the second *Abbott* case applies with equal force to the Watts appointees since consolidation of both cities, Venice and Watts, with the City of Los Angeles took place subsequent to July 1, 1925. It would also apply to the plaintiff widows whose husbands had "breaks" in their period of employment between their resignations from their respective positions and their reemployment at a subsequent date.

Plaintiffs (in *Armstrong*) place great emphasis upon the case of *Wisley* v. *City of San Diego*, 188 Cal.App.2d 482 [10 Cal.Rptr. 765], and since this case was later in point of time than the second *Abbott* case they feel that it should control the decision in these cases. A comparison of the facts in the

*Wisley* case with the facts in the second *Abbott* decision reveals that the decisions are not in conflict since in the second *Abbott* case, as in the cases before us, the plaintiffs had "resigned" their positions, whereas in the *Wisley* case the plaintiff Willis had been laid off due to a seasonal slack in employment and had thereafter been "reinstated." Clearly plaintiff Willis in the *Wisley* case had neither been removed from office nor had he resigned therefrom. There is nothing in the *Wisley* case or other cases cited by plaintiffs which would militate against our following the holding in the second *Abbott* case.

Plaintiffs (in *Armstrong*) contend that sections 181, 182, 183 and 184 of the charter, as amended in 1947, provided for the payment of fluctuating pensions based upon current salaries as paid to active employees of equal rank instead of fixed retirement benefits, based on the salaries paid at the time of retirement. Plaintiffs cite a number of cases construing charter provisions similar to sections 181, 182 and 183, holding, in effect, a statute which provides for the payment of a given percentage of the salary attached to the rank or position held by the member at the date of his retirement, or for a given period of time prior thereto, requires the payment of a fluctuating pension based upon salaries paid to active employees of equal rank. (*Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d 438; *Eichelberger* v. *City of Berkeley,* 46 Cal.2d 182 [293 P.2d 1]; *Terry* v. *City of Berkeley,* 41 Cal.2d 698 [263 P.2d 833]; *Hafey* v. *City of Berkeley,* 163 Cal.App. 2d 474 [329 P.2d 711]; *Jones* v. *Cooney,* 82 Cal.App. 265 [255 P. 536].)

The provisions of sections 181, 182 and 183 must be read, however, in conjunction with section 184, which as amended in 1927 provided ". . . that all pensions granted in accordance with the provisions of sections 181, 182 and 183 hereof shall remain in full force and effect for the period granted, and any increase or decrease of salaries of active members of the Fire and Police Departments shall not in anywise affect the amount of the pensions to be paid to retired members of such departments, or to any other person pensioned pursuant to the provisions of this article, nor shall the amount of such pensions be changed for any other reason, *except as otherwise specifically provided in this article.*" (Emphasis added.) The amendment of 1947 did not change the substance of this section. Obviously, it was the intent of these provisions to provide for fixed and not fluctuating pensions. This was the

construction given these sections in both of the *Abbott* cases. We hold, in accord therewith, that these provisions provided for fixed and not fluctuating pensions.

Other points raised in the *Armstrong* case have been heretofore determined in the references in this opinion to the *Acker, Casselberry* and *Ahrens* cases.

We shall limit our comments on the cross appeal by the defendants in the *Armstrong* case to contentions not disposed of in the companion cases. We affirm the trial judge in his holding (in *Armstrong*) that the 1925 charter change from fluctuating to fixed pensions is valid and binding as to each member plaintiff whose contract of employment with the city was entered into subsequent to July 1, 1925; and that the 1927 charter change from fluctuating to fixed pensions is valid and binding as to each widow plaintiff whose deceased husband's contract of employment with the city was entered into subsequent to January 17, 1927.

We concur further in the interpretation by the trial court that the language used in the 1947 amendment, to wit, ''average monthly rate of salary assigned to the ranks or positions held by such member during the three years immediately preceding the date of his retirement'' means the same as ''salary provided at the time of retirement for the average rank or ranks held during the three years immediately preceding the date of his retirement.''

In the case of *Hafey* v. *City of Berkeley*, 163 Cal.App.2d 474, 476, 478 [329 P.2d 711], the following phrase, ''of the average salary attached to the rank or ranks held during the three years immediately preceding the date of retirement'' was interpreted to mean ''the average salary paid, *at the time of retirement*, to the rank or ranks held for the preceding three years.'' (Emphasis added.) To all intents and purposes this phrase is the same as in the case before us. No valid distinction can be made based upon the use of the phrase, ''salary attached to the rank or ranks,'' the language before the court in the *Hafey* case (*Hafey* v. *City of Berkeley, supra,* 163 Cal. App.2d 474, 476, 478), and the phrase, ''salary assigned to the rank or ranks,'' in the Los Angeles charter phrase which we have for consideration. The two phrases mean precisely the same in the context used.

Defendants (in *Armstrong*) seek to eliminate the *Hafey* case (*Hafey* v. *City of Berkeley, supra,* 163 Cal.App.2d 474) from consideration on the basis that in it the court concluded the charter provisions under construction provided for a

*fluctuating* pension whereas in the case before us and before the court in both *Abbott* cases a *fixed* pension is provided for. Were it not for the restrictive language of section 184 of the Los Angeles Charter no doubt the same construction would have been given the language in the sections which immediately preceded it as was given in the *Hafey* case (*Hafey* v. *City of Berkeley, supra,* 163 Cal.App.2d 474); the 1925 and 1927 amendments would have been construed to have provided for a *fluctuating* pension. However, as heretofore indicated, the clear and unequivocal intent of section 184 of the charter was to provide a *fixed* pension. Section 184, as amended in 1947 (Stats. 1947, p. 3685), reads:

"That all pensions granted in accordance with the provisions of Section 181, 182, 182¼, 183 and 183½ hereof shall remain in full force and effect for the period granted, and any increase or decrease of salaries of active members of the Fire and Police Departments shall not in anywise affect the amount of the pensions to be paid to retired members of such departments, or to any other person pensioned pursuant to the provisions of this article, nor shall the amount of such pensions be changed for any other reason, *except as otherwise specifically provided in this article.*" (Emphasis added.)

The italicized language added by the 1927 revision of section 184, and continued to be retained in the 1947 amendment, was correctly interpreted by the trial court to "specifically reserve to the legislative authority the right to make lawful changes in the amounts, or in the method of computation, or in the extension of additional benefits" and unless a contrary intent appears, an increase in pension benefits applies to persons already retired. The trial court concluded the formula adopted in 1947 was intended to apply to persons already retired.

The defendants (in *Armstrong*) raise their final point that the trial court erred with respect to the pension rights of plaintiff William M. Young. The latter was retired between 1927 and 1947 when service-connected disability pensions were authorized at from 10 per cent to 90 per cent of salary of rank at date of retirement. Young was granted a pension of 40 per cent of such salary. Defendants assert that the 1947 modification of section 182 authorizing such pensions from 50 per cent to 90 per cent of such salary would not have the effect of raising his pension to the minimum 50 per cent thereof because his pension right of a 40 per cent disability pension had been vested and the board of pension commis-

sioners was the only person or body with authority to change the percentage thereof. Defendants assert such exclusive power in the board of pension commissioners was continued in that board by the 1947 amendment to said section and cannot be usurped by any other body, judicial or otherwise. The same assertion is made with respect to the prospective widow of this plaintiff; that her pension rights are as provided for in the charter for the widow of a pensioner who had received a 40 per cent service-connected disability pension. However, clearly, the people of the city by charter amendment had the power to increase the benefits to disabled pensioners, and we believe that the trial court correctly found this in fact was done when by charter amendment the people raised the minimum retirement benefits for service-connected disabled members to 50 per cent of salary of rank at date of retirement.

▉ In defendants' appeal in the *Henry* case only one point is raised not heretofore disposed of in the companion cases: Pursuant to the provisions of sections 363 and 376 of the city charter retroactive payments to plaintiff Henry are limited to six months prior to June 30, 1958, which is the date upon which he filed a claim therefor.

Plaintiff Henry, since the rendition of the judgment in the trial court, has been paid the fluctuating pension he seeks retroactive through the six months' period immediately prior to the date on which he filed his claim therefor, to wit, retroactive to December 1, 1957. A partial satisfaction of judgment therefore was filed on May 13, 1960. For the purpose of this appeal the only period remaining in dispute is between September 1, 1955, and December 1, 1957. Plaintiff Henry retired on July 1, 1939. He filed two claims. On May 10, 1955, he filed a claim for a fluctuating pension instead of the fixed pension which he had been receiving. This claim was rejected. On June 30, 1958, he filed another claim for a fluctuating pension, and on September 30, 1958, he filed his complaint in the instant action. Admittedly, plaintiff Henry failed to bring an action to enforce his claim to additional pension rights within three years after denial of his first claim, as required under section 338, subdivision 1 of the Code of Civil Procedure. (*Dillon* v. *Board of Pension Comrs.*, 18 Cal.2d 427, 431 [116 P.2d 37, 136 A.L.R. 800].) Therefore, assert defendants, the only claim that may be considered is the one filed on June 30, 1958, and under the charter claims limitation section (§ 376) the only retroactive period that may be considered is the six months' period immediately preceding

the filing of that claim, citing the first *Abbott* case. (*Abbott v. City of Los Angeles, supra,* 50 Cal.2d 438.) The trial court ruled in effect that only the 1955 claim is to be considered and therefore plaintiff Henry may recover all monthly payments accruing within the three-year period immediately prior to the filing of his action on September 30, 1958.

Defendants assert that their contention that any money judgment in favor of plaintiff Henry must be based upon his second claim is not, as noted by the trial court, inconsistent with their position with reference to other plaintiffs in the companion cases who also admittedly filed two claims. This is true, defendants assert, because in all the other instances in which two claims were filed an action for recovery of the pension involved was instituted within three years after the filing of the first claim. As pointed out by the Supreme Court in the case of *Dillon* v. *Board of Pension Comrs., supra,* 18 Cal.2d 427, the right to recover succeeding monthly payments after the right to a pensionable status has been established is a continuing right and the charter provision does not require a plaintiff to make a succession of claims in order to comply with the terms of the charter.

The trial court, in its memorandum decision, correctly found with respect to plaintiff Henry, "Inasmuch as each additional monthly installment due Henry upon his claim of May 10, 1955, constituted a separate cause of action, only those payments accruing more than three (3) years prior to the filing of his action are barred by the Statute of Limitations and he is entitled to a money judgment for all installments not so barred." The court based its conclusion upon the decision in *Talbot* v. *City of Pasadena,* 28 Cal.App.2d 271 [82 P.2d 483], and the cases cited therein, and we concur.

Defendants assert that the *Talbot* case (*Talbot* v. *City of Pasadena, supra,* 28 Cal.App.2d 271) can be of no help to plaintiff Henry because as to this particular issue, it "was expressly disapproved by the Supreme Court in *Dillon* v. *Board of Pension Commissioners, supra,* 18 Cal.2d 427, 431." However, the *Dillon* case dealt with a cause of action to establish as a matter of law that the petitioner is entitled to the status of a pensioner. Since her suit was not commenced within the three-year statute of limitations (Code Civ. Proc., § 338) it was barred. Plaintiff Henry, in the case before us, established his right to a pension 15 or more years before he filed his first claim (to a fluctuating instead of fixed pension)

in 1955. Thus the *Dillon* case, *supra,* does not apply. In the first *Abbott* case, *supra,* the Supreme Court distinguished the *Dillon* case, and others cited therein, noting that they dealt with determinations as to plaintiff's *status* as a pensioner or right to a pension and, as the court noted, "are not controlling or persuasive here." (P. 464.)

The judgments of the trial court are affirmed. On the appeals of the pensioners, plaintiffs-appellants are awarded costs; on the appeals of the defendants no costs are awarded.

Jefferson, J., and Balthis, J., concurred.

Petitions by plaintiffs and appellants for a rehearing in Civ. No. 25189, Civ. No. 25190, Civ. No. 25191, and Civ. No. 25192 were denied March 28, 1962, and petitions by plaintiffs and appellants for a hearing by the Supreme Court in Civ. No. 25189, Civ. No. 25190, Civ. No. 25191 and Civ. No. 25192 were denied May 16, 1962.