MARY E. GALLAGHER vs. CONTRIBUTORY RETIREMENT
APPEAL BOARD & another.[1]

Suffolk.    December 8, 1975. — January 9, 1976.

Present: HALE, C.J., ROSE, & GRANT, JJ.

Retirement, Part-time employee.

Legislative history of the provisions of the General Laws pertaining to
    retirement systems as they relate to part-time employees of cities
    and towns. [6-11]
There was nothing in any of the provisions of G. L. c. 32, §§ 1-28,
    which authorized a city's retirement board to reduce the period of
    a part-time employee's actual service to the city to a lesser period in
    determining the yearly allowance to which the employee's widow
    was entitled. [11]

BILL IN EQUITY filed in the Superior Court on January
22, 1974. The suit was heard by Lynch, J.

Robert J. Muldoon, Jr. (Jeremiah F. Healy, III, with
him) for the plaintiff.

Francis Glynn, Special Assistant City Solicitor (Christo-

---

[1] Retirement Board of Medford.

1

*pher F. Connolly* with him) for the Retirement Board of Medford, intervener.

*Francis X. Bellotti,* Attorney General, *& Paul A. Good,* Assistant Attorney General, for the Contributory Retirement Appeal Board, submitted a brief.

GRANT, J.    The plaintiff, who is the widow of Mark E. Gallagher, Jr., has appealed from successive determinations of the Retirement Board of Medford (local board), the Contributory Retirement Appeal Board (appeal board) and the Superior Court which are adverse to her contention that the local board lacked authority to reduce the period of Mr. Gallagher's actual service to the city of Medford (city) to a lesser period in determining the amount of the yearly allowance from the Medford retirement system to which she became entitled on and by reason of Mr. Gallagher's death while in the employ of the city. We summarize the material facts as they appear from the statement of agreed facts and its supporting documents on which this matter was submitted to the appeal board.

Mr. Gallagher was continuously employed in the law department of the city, either as an assistant city solicitor or as the city solicitor, during the entire period from and including January 6, 1938, through March 11, 1944, when he left the employ of the city. The city's contributory retirement system (system) went into effect on January 1, 1946. Mr. Gallagher reentered the employ of the city on February 7, 1950, as the city solicitor, and thereafter served in that capacity during the separate periods from and including February 7, 1950, through March 11, 1957, and March 3, 1958, through January 6, 1972, which was the date of his death.[2]

On September 21, 1950, Mr. Gallagher executed an application for membership in the system[3] in which he char-

---

[2] He appears also to have served as acting city manager during a period of approximately two weeks in June of 1958.

[3] The application appears to have been on a "[p]rescribed form", as defined in G. L. c. 32, § 1, as appearing in St. 1945, c. 658, §1.

acterized his employment as "permanent" and "part-time", identified the date of his "present permanent appointment" as February 7, 1950, and stated his desire "to make partial periodic deposits to cover past service." The space in the form for the local board's formal approval of the application[4] was left blank, but it appears from other records of the local board and from the agreed facts that Mr. Gallagher was accepted into the system (see G. L. c. 32, § 3[2] [d]; *Andrade* v. *Contributory Retirement Appeal Bd.* 350 Mass. 447, 449-450 [1966]) as of October 1, 1950, that he was thereafter permitted to make make-up payments applicable to a portion of his service prior to 1950 and to the period from and including February 7, 1950, through September 30, 1950,[5] and that deductions were regularly made from his earnings during the two separate periods of his subsequent service as city solicitor which have been recited above. At some undetermined point Mr. Gallagher filed an election in favor of the member-survivor allowance now found in G. L. c. 32, § 12 (2), *Option (d)*.

Historically, the office of city solicitor of Medford has been a part-time position, and it seems to have been so regarded under the salary ordinance which was in effect at the time Mr. Gallagher reentered the employ of the city on February 7, 1950. On April 4, 1950,[6] Mr. Gallagher, acting in his capacity as city solicitor, specifically approved the legality of an amendment to the salary ordinance which described his position as "part time" under the relevant pay rating description found in the ordinance. Throughout Mr. Gallagher's employment as city solicitor during and following 1950 he appears to have performed all the duties expected of him as city solicitor, but those duties did not

---

[4] See G. L. c. 32, § 3 (2) (*d*).

[5] See G. L. c. 32, §§ 3 (3A) and 4 (2) (*c*).

[6] This date followed Mr. Gallagher's reemployment on February 7, 1950, but preceded his becoming a member of the system on October 1, 1950.

require his full time, and he also maintained his own private law office and practice.[7]

Following Mr. Gallagher's death the plaintiff applied to the local board to determine the yearly allowance to which she was entitled under the aforementioned *Option (d)*. In the course of making its determination of such allowance the local board appears to have arrived at a judgment that only two thirds of Mr. Gallagher's total time had been devoted to his duties as city solicitor and to have reduced by a factor of one third the total number of calendar years and full months actually served by him in that capacity.[8] That treatment appears to have been confirmed both by the appeal board (under G. L. c. 32, § 16[4]) and by the Superior Court (under G. L. c. 30A, § 14[8]).[9] The plaintiff has taken a still further appeal to this court.

In their briefs and oral arguments before us all the parties have proceeded on the assumption that the central is-

---

[7] There is no agreement as to the actual time spent by Mr. Gallagher in the performance of his official duties or as to the proportion of his total time so spent.

[8] The case has been argued to us on the basis that the local board acted in the manner we have described. All we actually know concerning that board's calculations is found in its letter to the plaintiff of February 29, 1972, in which it advised her that "it was voted to grant you . . . member-survivor benefits . . . in the amount of approximately $3,133.00 per year . . . . This figure represents 2/3rds of your late husband's pension, approximately $4,700.00 per year, as required by law. The $4,700.00 represents your late husband's pension based on 66+2/3rds% of his total creditable service [sic], rather than full-time service."

We assume that the board used the word "pension" in the same loose sense in which all the parties have used that word in their respective briefs. What the plaintiff was and is entitled to under either § 5(2)(*a*) or § 5(3)(*c*) of c. 32 is the "yearly amount of [her] retirement allowance." The "retirement allowance" is defined in c. 32, § 1, as "the sum of the amount of the annuity and the amount of the pension provided for in sections one to twenty-eight inclusive." The words "annuity" and "pension" are separately defined in § 1, and it is clear that the "pension" is only one component of the "retirement allowance." See and compare *Boston Retirement Bd.* v. *McCormick,* 345 Mass. 692, 694-695 (1963); *Opinion of the Justices,* 364 Mass. 847, 853-854 (1973).

[9] The local board intervened in the proceedings in the Superior Court. G. L. c. 30A, § 14(2) and (5).

sue in this case is one which will be resolved by determining the proper interpretation of the provisions of G. L. c. 32, § 4(2) (*b*), as appearing in St. 1966, c. 509, § 1.[10] Both boards have taken the position that the local board's action in reducing Mr. Gallagher's years and months of actual service as city solicitor following his 1950 reemployment in that capacity was and is justified by the broad general language of the first sentence of paragraph (*b*). The plaintiff has taken the position that the language of the first sentence must be read in the light of and is controlled by the narrower language of the second sentence of (*b*) which, she urges, would permit a local board to reduce the "amount of credit for membership service" of a part-time employee such as Mr. Gallagher only "under appropriate rules and regulations which shall be subject to the approval of the actuary,"[11] and that no such reduction is authorized

---

[10] Paragraph (*b*) as so appearing reads as follows: "The [local] board shall fix and determine how much service in any calendar year is equivalent to a year of service. In all cases involving part-time, provisional, temporary, temporary provisional, seasonal or intermittent employment or service of any employee in any governmental unit, including such employment or service of any state official or of any person elected by popular vote to a county or municipal office or position, the board, under appropriate rules and regulations which shall be subject to the approval of the actuary, shall fix and determine [1] the amount of creditable prior service, if any, and [2] the amount of credit for membership service of any such employee who becomes a member, including any prescribed waiting period before eligibility for membership, established either by law or board ruling, prior to January first, nineteen hundred and forty-six, for which such service credit was given upon attaining membership; provided, that in the case of any such employee whose work is found by the board to be seasonal in its nature, the board shall credit as the equivalent of one year of service, actual full-time service of not less than seven months during any one calendar year; and provided, further, that the board shall credit as full-time service not to exceed a maximum of five years that period of time during which a reserve or permanent-intermittent police officer or a reserve, permanent-intermittent or call fire fighter was on his respective list and was eligible for assignment to duty subsequent to his appointment; and provided, further, that such service as a permanent-intermittent or call fire fighter shall be credited only if such permanent-intermittent or call fire fighter was later appointed as a permanent member of the fire department." The bracketed figures have been inserted for ease of reference in our opinion.

[11] The "actuary" is defined and identified in c. 32, § 1. His principal duties in a case such as the present are found in § 21(3) and (4).

in the circumstances of this case because no such rules and regulations have been adopted by the local board.[12] We do not resolve the conflicting contentions of the parties because we conclude that § 4(2) (*b*) has no application here except with respect to the period of Mr. Gallagher's employment by the city prior to February 7, 1950, a period as to which there does not appear to be any controversy.

We reach that conclusion by a consideration of the legislative history of the present provisions of the General Laws pertaining to retirement systems as they relate to part-time employees of cities and towns and by a careful reading of § 4(2) (*b*) in its context. It would appear from the definition of "employees" in G. L. c. 32, § 26 (as appearing in the Tercentenary Edition), as "regular and permanent employees whose sole or principal employment is in the service of the city or town" that at least some part-time municipal employees were intended to be covered by the division of G. L. (Ter. Ed.) c. 32 which was entitled "RETIREMENT SYSTEMS FOR CITIES AND TOWNS" and which was comprised of §§ 26-31, inclusive, of that chapter. The sections just referred to were struck by St. 1936, c. 318 ("An Act providing for contributory retirement systems for cities and towns that may be accepted by them, and making certain other changes in the laws relative to retirement systems"), § 1, which inserted in place thereof a new § 26 and the fourteen new following sections. The new § 26 defined an employee in general terms as "any person who is regularly employed in the service of, and whose salary or compensation is paid by, the city or town, including . . . officials or public officers so paid, whether employed or appointed for stated terms or otherwise . . ." and provided that "[i]n all cases of doubt the [local] board shall decide who is an employee." None of the statutory provisions thus far referred to contained any provision which dealt expressly with the membership or retirement rights of part-time municipal employees.

---

[12] It is an agreed fact that the local board "has not promulgated or established rules and regulations governing the pro-ration of calendar years of service into years of creditable service."

The first legislative effort to deal comprehensively with the membership and retirement rights of part-time employees in and under the contributory retirement systems of cities and towns is found in the provisions of G. L. c. 32, §§ 1, 3(2) (*a*) (iv), 3(2) (*d*), 4(2) (*b*), 4(2) (*c*) and 5(3) (*c*), as appearing in St. 1945, c. 658, § 1.[13] "[A]s applied to persons whose regular compensation...is paid by any political subdivision of the commonwealth" an "employee" was again defined by the new c. 32, § 1, in general terms substantially similar (for present purposes) to those previously quoted from the prior c. 32, § 26. The rights of part-time employees (nowhere expressly defined) were delineated in the aforementioned new §§ 3(2) (*a*) (iv), 3(2) (*d*), 4(2) (*b*), 4(2) (*c*) and 5(3) (*c*).[14]

Having traced the immediate history of § 4(2) (*b*) and related it to other provisions concerning part-time municipal employees, we may now address ourselves to the proper construction of § 4(2) (*b*) itself.[15] We note first the structure of the entire § 4 and the titles assigned to it and its four various subdivisions by the Legislature in the course of enacting the aforementioned St. 1945, c. 658, § 1. Section 4, standing by itself, constituted an entire division of c. 32 entitled "CREDITABLE SERVICE." That division was then broken down into four separate subdivisions which were respectively and successively entitled *"Qualifications for Credit for Service"* (§ 4[1]), *"Filing and Verification of Statements of Service"* (§ 4[2]), *"Prior Service Certificates"* (§ 4[3]), and *"Membership and Retirement Certi-*

---

[13] Statute 1945, c. 658, which was entitled "An Act to establish a single contributory retirement law for public employees," appears to have resulted from the comprehensive report of the commissioners appointed under Res. 1943, c. 49. See 1945 House Docs. Nos. 1950 and 2075.

[14] Each of those five provisions speaks in terms of employment or service which is described as "part-time, provisional, temporary, temporary provisional, seasonal or intermittent." We shall hereinafter refer to all such employment or service simply and collectively as "part-time."

[15] This section was considered but not construed in *Bianchi* v. *Retirement Bd. of Somerville,* 359 Mass. 642, 647-648 (1971).

*ficates*" (§ 4[4]). What has become the present § 4 (2) (*b*)
thus emerged as an integral part of the subdivision entitled
*"Filing and Verification of Statements of Service"* which
must be read in conjunction with the other paragraphs of
that subdivision.

There has been no change in any of the aforementioned
division or subdivision titles since the enactment of St.
1945, c. 658, § 1. Accordingly, the first sentence of § 4 (2) (*b*)
(*supra*, n.10), on which the two boards rely, must be read
as referring directly and only to the "detailed statement
of all service for which he claims credit rendered by him
as an employee of any governmental unit prior to the date
as of which such system became operative therein"[16] which
§ 4 (2) (*a*) requires be filed by "[e]ach person becoming a
member of any system." The first portion of the second
sentence of § 4 (2) (*b*), that which precedes the first proviso
and on which the plaintiff relies, provides that in the course
of evaluating and determining the rights claimed by a part-
time employee in his § 4 (2) (*a*) "statement of . . . service"
the local board shall make the two separate and distinct
subsidiary determinations which we have bracketed as [1]
and [2], respectively, in note 10, *supra*.[17] The first such
determination is as to the amount of the part-time em-
ployee's "creditable prior service."[18] The second is as to the
"amount of credit for membership service"[19] which is to be

---

[16] See the § 1 definition of the words "[d]ate the system becomes
operative."

[17] Both those determinations are to be made "under appropriate
rules and regulations which shall be subject to the approval of the
actuary."

[18] Defined in § 1 as "*service* as an *employee* in any *governmental
unit* rendered prior to the *date the system* pertaining to such govern-
mental unit *became operative* and for which credit is allowable to any
*member* under" §§ 1-28, inclusive (italics supplied). Each of the itali-
cized words or phrases is itself defined in § 1.
Once a local board has made the required determination of "credit-
able prior service", if any, it must issue to the member a "prior ser-
vice certificate" of the type contemplated by § 4(3) (*a*).

[19] Also defined in § 1.

given to a part-time employee "who becomes a member" of a system by reason of his membership in an earlier system which may have existed prior to January 1, 1946. The balance of the second sentence of § 4 (2) (b), that portion which commences with the first proviso thereof and on which no party relies, is concerned with two particular situations in which a local board is to give part-time employees credit for prior service in accordance with the specific statutory formulae set out therein rather than in accordance with any rules or regulations which may be promulgated by the board.

We conclude from the foregoing analysis that no part of § 4 (2) (b) is concerned with any type of determination by a local board other than one of the types discussed in the preceding paragraph of this opinion. The present controversy is not concerned with any such determination which may have been made by the local board.[20] As we understand the case as it has been argued to us, the controversy centers over the question whether there was any statutory or other warrant for the local board's reduction of the length of Mr. Gallagher's actual service by reason of the fact that his employment subsequent to February 7, 1950,[21] was not full-time. In our opinion the resolution

---

[20] As applied to the facts of this case, the local board was not required to make any determination under the portion of § 4 (2) (b) which is bracketed as [2] in note 10, supra, because Mr. Gallagher was not a member of any retirement system in existence prior to January 1, 1946, which was the effective date of the Medford system. The board was required by the portion of § 4 (2) (b) which is bracketed as [1] in note 10 to make a determination of the "creditable prior service" to which Mr. Gallagher was entitled by reason of his service to the city during the period from and including January 6, 1938, through March 11, 1944, and to issue to him a "prior service certificate" under § 4 (3) (a). We know nothing of any such determination or certificate, but it can be inferred from the agreed facts that some such determination was made.

[21] We select this date, which was the date of Mr. Gallagher's reemployment as city solicitor, rather than October 1, 1950, which was the date on which he appears to have become a member of the system, because it is evident from the agreed facts that the local board did in fact credit Mr. Gallagher with membership in the system during the period from and including February 7, 1950, through September 30, 1950. See the provisions of § 4 (2) (c) (infra, n. 24).

of that controversy turns on other provisions of c. 32 which have not previously been considered in detail.

General Laws, c. 32, § 4 ["CREDITABLE SERVICE"] (1) [*"Qualifications for Credit for Service"*][22] (*a*), provides that "[a]ny member in service shall, subject to the provisions and limitations of sections one to twenty-eight inclusive, be credited with *all* service rendered by him as an employee in any governmental unit after becoming a member of the system pertaining thereto" (emphasis supplied). No distinction is drawn in the quoted language or in the word "service" (as defined in § 1[23]) between a part-time employee and one who might be described as full-time. Accordingly, the question arises whether there is anything to be found elsewhere in §§ 1-28 which would authorize a local board to reduce the length of a part-time employee's actual service in the course of determining the amount of the "retirement allowance" (see n.8, *supra*) to which he is entitled. We have already seen that § 4(2) (*b*) has nothing to do with the credit which is to be allowed to any employee with respect to the time served by him subsequent to his becoming a member of a retirement system.

We cannot accept the suggestion that the local board's action in this case was governed by the provisions of § 4(2) (*c*) (as appearing in St. 1961, c. 494),[24] for it is clear, whether those provisions are read alone or in conjunction with those of §§ 4(2) (*b*) and 4(2) (*d*), that they

---

[22] The source of the bracketed words has already been noted and explained.

[23] "[S]ervice as an employee in any governmental unit for which regular compensation is paid."

[24] "In the case of any employee of any governmental unit who is a member of a retirement system pertaining thereto, the [local] board may allow credit, upon whatever proportionate basis it shall determine under appropriate rules and regulations which shall be subject to the approval of the actuary, for any previous period of part-time, provisional, temporary, temporary provisional, seasonal or intermittent employment or service rendered by him after such a retirement system becomes operative and while he was not eligible for membership . . . ."

are concerned only with the credit which is to be allowed to a member of a retirement system with respect to his part-time service prior to becoming eligible for membership in a retirement system. Nor can we accept the local board's suggestion that its action was warranted by the provisions of § 5(3) (c) (as appearing in St. 1945, c. 658, § 1).[25] Without pausing to determine whether the word "may" which appears in that section is to be construed as mandatory or merely permissive, we think it clear that the only reduction in the actual service of a part-time employee which is authorized by that section is one which is made under rules and regulations of the type therein referred to, and it is an agreed fact in this case (*supra,* n.12) that the local board has not promulgated any such rules and regulations.

We conclude that there is nothing in any of the provisions of §§ 1-28 which authorized the local board to deviate in this case from the general requirement of § 4(1) (a) that "[a]ny member in service shall . . . be credited with all service rendered by him as an employee . . . after becoming a member of the system," and that the local board erred in reducing what would otherwise have been the plaintiff's yearly allowance because of Mr. Gallagher's having been a part-time employee during the periods from and including February 7, 1950, through March 11, 1957, and March 3, 1958, through January 6, 1972.

The only remaining questions are as to the disposition which should now be made of this case. It seems clear that the plaintiff has in fact been paid less than the yearly allowance to which she is entitled. The parties appear to be in agreement that $4,700.00 is the "approximate" amount

---

[25] "The [local] board may adopt appropriate rules and regulations which shall be subject to the approval of the actuary, to be used in determining the normal yearly amount of any retirement allowance in accordance with the provisions of sections one to twenty-eight inclusive on account of any member the whole or a portion of whose creditable service is on a part-time, provisional, temporary, temporary provisional, seasonal or intermittent basis . . .."

of the yearly allowance to which the plaintiff is entitled under § 12 (2), *Option* (*d*), if the reduction made by the local board is not to stand (as it is not) and that $3,133.00 is the "approximate" amount of the yearly allowance which has actually been paid to the plaintiff since the date of Mr. Gallagher's death (see n.8, *supra*). We are told in the local board's brief that the actuary, acting under the provisions of § 21 (3) (*a*),[26] has "approved the determination" of the local board. We would suppose, although we cannot be certain, that the actuary's approval relates to the figure of $4,700.00 as well as to the $3,133, even if both those figures may be "approximate." We think both "approximate" figures should now be translated into precise figures (if that has not already been done) so that a precise determination may now be made of the difference between each of the periodic payments which has been made to the plaintiff under G. L. c. 32, § 13 (1) (*b*), and what each of those payments should have been. The plaintiff is presently entitled to the sum of those differences, as well as to interest on each of those differences from the date on which it should have been paid. No reason appears why such further calculations as may now be necessary should not be made by or under the direction of the Superior Court. See *Bianchi* v. *Retirement Bd. of Somerville*, 359 Mass. 642, 651-652 (1971).

The judgment of the Superior Court is reversed, and the decisions of the appeal board and of the local board are set aside. The case is remanded to the Superior Court for the further proceedings required by this opinion and for the entry of a judgment which will (a) determine the total amount (including interest) now due the plaintiff and (b) declare the precise yearly amount which shall be paid her in the future. The judgment may provide for the issuance by the local board of whatever vouchers are necessary to

---

[26] "The actuary shall check the calculation and amount of each annuity, pension or retirement allowance granted under the provisions of sections one to twenty-eight inclusive, and all such calculations and amounts shall be subject to his approval."

effect the required payments to the plaintiff. See G. L. c. 32, § 23 (2) (*a*).

*So ordered.*