SUPREME JUDICIAL COURT 
 
 SUSAN HARTNETT vs. CONTRIBUTORY RETIREMENT APPEAL BOARD & others.[1]

 
 Docket:
 SJC-13568
 
 
 Dates:
 May 8, 2024 – September 11, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Public Employment, Retirement. Retirement. Pension. Municipal Corporations, Retirement board, Pensions. Contributory Retirement Appeal Board. Public Employee Retirement Administration Commission. Administrative Law, Agency's interpretation of statute. Statute, Construction. Practice, Civil, Judgment on the pleadings. Words, "Two consecutive years."
 
 

             Civil action commenced in the Superior Court Department on October 1, 2021.
            The case was heard by Jackie A. Cowin, J., on motions for judgment on the pleadings.
            The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
            Maryanne Reynolds, Assistant Attorney General, for Contributory Retirement Appeal Board & another.
            Natacha Thomas for Boston retirement system.
            Gerald A. McDonough (Thomas F. Gibson also present) for the plaintiff.
            WENDLANDT, J.  This case concerns the question whether the years 1990 and 2002 are "[two] consecutive years" as that phrase is used in the second sentence of the public employee pension statute, G. L. c. 32, § 5 (2) (a) (anti spiking provision).  Retirement benefits for a member of the public pension system depend on the member's annual compensation over a specified period of time, including the years of service immediately before the member's retirement.  Enacted as part of broader reforms to the public pension system in the wake of the Great Recession,[2] the anti spiking provision precludes a public pension plan member from garnering a disproportionate pension payment based on a sudden "spike" in the member's annual salary near the end of her public employment.  The provision requires examination of a look-back period of five years of qualifying service immediately prior to retirement.  If, between any "[two] consecutive years" during that look-back period, the member's salary more than doubles, the standard rules for calculating the member's pension amount are replaced by those set forth in the anti spiking provision.
            The defendants Contributory Retirement Appeal Board (CRAB), Public Employee Retirement Administration Commission (PERAC), and Boston retirement system (BRS) (collectively, agencies) contend that the plaintiff, Susan Hartnett, who worked for the Commonwealth until 1990 and then rejoined public service twelve years later in 2002 at a salary that was more than double her 1990 salary, is subject to the anti spiking provision because her years of service in 1990 and 2002 are "[two] consecutive years."  Concluding that the anti spiking provision is not triggered because the years 1990 and 2002 are not "[two] consecutive years" under the anti spiking provision, we affirm the Superior Court judge's judgment in favor of Hartnett.
            1.  Background.  a.  Facts.  The following facts largely are undisputed.  Hartnett worked for the Commonwealth from 1978 to 1990.  During that time, she paid contributions to the State retirement system.  When she left State service, she withdrew her pension plan contributions.  See G. L. c. 32, § 10 (4).  Thereafter, Hartnett earned a master's degree in public administration and for the next decade worked for a nonprofit organization.
             In July 2002, Hartnett returned to public service, this time working for the city of Boston (city) and receiving an annual compensation more than double the amount she had received in 1990, twelve years earlier.  Hartnett continued in public service with the city for approximately three years and eight months, during which time she paid into the BRS pension plan.  Prior to the end of her employment by the city, as provided by G. L. c. 32, § 3 (6) (d), she bought back her pension plan contributions for her prior years of State service.[3]  She left the city's employ in April 2006, but deferred her retirement.
            In 2016, following the Legislature's passage of the 2011 Pension Reform Act, St. 2011, c. 176, which included the anti spiking provision, see infra, Hartnett informed BRS that she was retired.  Although BRS initially calculated her pension amount without applying the anti spiking provision, after an audit by PERAC, BRS informed Hartnett that the anti spiking provision governed the amount she was due under the pension statute, reducing her monthly benefit amount by approximately $500.  BRS also sought to recoup past overpayment.
            b.  Prior proceedings.  Hartnett challenged BRS's application of the anti spiking provision, appealing the decision to CRAB, which then assigned the appeal to the Division of Administrative Law Appeals (DALA); PERAC subsequently was permitted to intervene as a party.  The DALA administrative magistrate affirmed BRS's decision to apply the anti spiking provision.  Hartnett then appealed to CRAB, which affirmed the DALA administrative magistrate's decision.
            Hartnett next sought judicial review of CRAB's decision in the Superior Court pursuant to G. L. c. 30A, § 14.  On cross motions for judgment on the pleadings, a Superior Court judge entered a judgment in favor of Hartnett.  The judge agreed with CRAB that the anti spiking provision generally would apply to a member in Hartnett's circumstances because "'[two] consecutive years' in the [anti spiking provision] means [two] consecutive years of creditable service, whether contiguous or not."  However, the judge also determined that application of the anti spiking provision would violate G. L. c. 32, § 25 (5).[4]
            The agencies timely appealed, and Hartnett filed a timely cross appeal.  We transferred the case to this court sua sponte.
            2.  Discussion.  "Pursuant to G. L. c. 32, public employees who participate in the Commonwealth's retirement system . . . and meet certain age and years of service criteria receive a government pension . . . at retirement."  O'Leary v. Contributory Retirement Appeal Bd., 490 Mass. 480, 481 (2022).  Relevant to the present case, for members joining before April 2, 2012, the pension amount received by the member depends on the greater of either the highest average annual amount of regular compensation for "three consecutive years of creditable service" or the average annual amount of regular compensation for the final three years of creditable service, "whether consecutive or not"[5] (emphases added).  G. L. c. 32, § 5 (2) (a).
            The aforementioned standard calculation does not govern the amount a member receives if the anti spiking provision is triggered.  The anti spiking provision provides:
"Notwithstanding the previous sentence, if in the [five] years of creditable service immediately preceding retirement, the difference in the annual rate of regular compensation between any [two] consecutive years exceeds [one hundred percent], the normal yearly amount of the retirement allowance shall be based on the average annual rate of regular compensation received by the member during the period of [five] consecutive years preceding retirement" (emphasis added).
G. L. c. 32, § 5 (2) (a).  Put another way, the anti spiking provision governs if during the look-back period -- the five years of creditable service immediately preceding retirement -- the member's annual compensation between any "[two] consecutive years" more than doubled.  Id.
            The agencies contend that "[two] consecutive years" means "two years of creditable service that immediately follow each other without another intervening year of creditable service."  Applying this construction, the agencies argue that the years 1990, when Hartnett left State service, and 2002, when Hartnett returned to public service for the city, are two consecutive years.  In contrast, Hartnett contends that the "[two] consecutive years" must be two back-to-back years.  As such, she maintains that the phrase does not capture years separated by a gap of twelve years.
            a.  Standard of review.  A party challenging an agency's determination generally bears a "heavy burden" (citation omitted).  Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 689 (2012).  We grant deference to an agency's reasonable interpretation of a statute it is tasked with enforcing.  Alves's Case, 451 Mass. 171, 173 (2008).  See Boston Retirement Bd. v. Contributory Retirement Appeal Bd., 441 Mass. 78, 82 (2004) (deferring to PERAC's interpretation of provision of G. L. c. 32).
            The weight we give to an agency's decision is, however, "one of deference, not abdication, and this court will . . . overrule agency interpretations of statutes or rules when those interpretations are arbitrary or unreasonable" (quotation and citation omitted).  Armstrong v. Secretary of Energy & Envtl. Affairs, 490 Mass. 243, 247 (2022).  An issue of statutory interpretation "presents a question of law for the court," Pelonzi v. Retirement Bd. of Beverly, 451 Mass. 475, 478 n.8 (2008), and "[w]here an agency determination involves a question of law, it is subject to de novo judicial review," Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375 (2000).
            In construing a statute, "we begin with its plain language."  Matter of the Estate of Mason, 493 Mass. 148, 152 (2023), quoting Metcalf v. BSC Group, Inc., 492 Mass. 676 (2023).  This is because "a statute must be interpreted according to the intent of the Legislature," which we derive "from all [of the statute's] words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished."  Matter of the Estate of Mason, supra at 151, quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).
            "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent."  Six Bros., Inc. v. Brookline, 493 Mass. 616, 622 (2024), quoting Sharris v. Commonwealth, 480 Mass. 586, 594 (2018).  We do not "construe a statutory provision in isolation; instead, we 'look to the statutory scheme as a whole . . . so as to produce an internal consistency within the statute.'"  Six Bros., Inc., supra, quoting Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605 (2019).
            b.  Construction of "[two] consecutive years."  Guided by these principles, we turn to the construction of the phrase "[two] consecutive years" in the anti spiking provision.
            i.  Plain and ordinary meaning.  The term "consecutive" means one after another without interruption.  See Oxford English Dictionary Online, https://www.oed.com/search/dictionary
/?scope=Entries&q=consecutive [https://perma.cc/NK78-7F2M] (defining "consecutive" as "[f]ollowing continuously; following each its predecessor in uninterrupted succession"); Cambridge Dictionary Online, https://dictionary.cambridge.org/us
/dictionary/english/consecutive [https://perma.cc/T52W-EJJL] ("Consecutive events, numbers, etc. follow one after another without an interruption").  Thus, the plain meaning of "[two] consecutive years" means two back-to-back years.  Ordinarily, this refers to two back-to-back twelve-month long periods, as Hartnett contends.
            The agencies maintain, however, that because creditable years of service are the "foundation" of eligibility for retirement benefits, the plain meaning of "[two] consecutive years" is two years of creditable service that immediately follow each other without another intervening year of creditable service.  See generally G. L. c. 32.  Applying this meaning, the agencies contend that 1990 and 2002, the years between which Hartnett's salary more than doubled, are two consecutive years because those are two creditable years of Hartnett's service without another intervening year of service, even though a gap comprising more than one decade separates the two years.
            The agencies' construction, while plausible when the phrase "[two] consecutive years" is considered in isolation, falters when the phrase is considered, as it must be, in the context of the statutory scheme as a whole.  See Six Bros., Inc., 493 Mass. at 622.  In particular, the agencies' construction fails to consider the provision of the statute immediately preceding the anti spiking provision.  That provision governs the standard pension calculation in circumstances where the anti spiking provision is not triggered.  As discussed supra, it refers to "three consecutive years of creditable service" and, alternatively, to the member's "last three years of creditable service preceding retirement," "whether consecutive or not."  G. L. c. 32, § 5 (2) (a).  This standard calculation provision, which existed prior to the 2011 amendments adding the anti spiking provision, demonstrates that the Legislature used the phrase "consecutive years" to refer to back-to-back years that follow one after another without interruption; and the Legislature employed the phrase "whether consecutive or not" to refer to creditable years of service that are not back-to-back years but instead are separated by a gap in service.  Id.
            Moreover, the agencies' construction cannot be reconciled with the Legislature's other amendment to the pension amount calculation.  Specifically, when the Legislature added the anti spiking provision, it also inserted a provision to govern members joining the pension system on or after April 2, 2012.  Essentially mirroring the language used for members joining prior to that date, the Legislature continued to distinguish between "consecutive years"[6] of creditable service and the last years of creditable service, "whether consecutive or not."[7]
            Together these provisions demonstrate that the Legislature knew how to, and did, refer to noncontiguous years within a period of creditable years by use of the phrase "whether consecutive or not," and referred to back-to-back years within a period of creditable years by use of the phrase "consecutive years."  G. L. c. 32, § 5 (2) (a).  Accordingly, the agencies' argument that the use of "[two] consecutive years" in the anti spiking provision refers to creditable years that immediately follow each other without another intervening year of creditable service is unsupported by the plain meaning of the phrase in the context of the statute.  See DiCarlo v. Suffolk Constr. Co., 473 Mass. 624, 630 (2016) ("when the Legislature uses the same term in the same section . . . , the term should be given a consistent meaning throughout" [citation omitted]); R.D. v. A.H., 454 Mass. 706, 714 (2009) ("where words are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute" [quotation omitted]).  See generally 2B N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 51:2, at 211 (7th ed. 2012), quoting Commissioner of Internal Revenue v. Ridgway's Estate, 291 F.2d 257, 259 (3d Cir. 1961) ("the need for uniformity [in interpreting statutory language] becomes more imperative where . . . a word is used more than once in the same section").
            ii.  Incorporated arguments.  While our analysis could end here, in view of the deference afforded to agencies with respect to construing statutes under their charge, we address additional arguments raised by the agencies.  See Retirement Bd. of Stoneham v. Contributory Retirement Appeal Bd. 476 Mass. 130, 134 (2016).  In support of their construction, the agencies incorporate by reference the reasoning of the DALA administrative magistrate.  The DALA administrative magistrate, in turn, reasoned that "[two] consecutive years" means two back-to-back creditable years of service even if those years are not contiguous years because, if the anti spiking provision applies, the amount paid to the member is based on the "[five] consecutive years preceding retirement."  As the DALA administrative magistrate correctly observed, not all members will have five years of uninterrupted or back-to-back years of service just before retirement; indeed, such is the case for Hartnett.  Thus, he properly concluded that the phrase "[five] consecutive years preceding retirement," on which the pension calculation is based if the anti spiking provision is triggered, must refer to the five creditable years preceding retirement, whether or not those five years are contiguous years.
            This is because, under the pension scheme, the amount of the pension is based on, inter alia, the member's salary during her public service -- that is, her creditable service time.  See G. L. c. 32, § 5.[8]  It is therefore clear, as the DALA administrative magistrate reasoned, that the "[five] consecutive years preceding retirement" referenced in the anti spiking provision are the five creditable years of service immediately preceding retirement even if those years are not back-to-back years.
            It does not follow, however, that the phrase any "[two] consecutive years" used in the anti spiking provision refers to any two creditable years without intervening creditable years.  G. L. c. 32, § 5 (2) (a).  More specifically, if construing "[five] consecutive years preceding retirement" as five creditable years is to have any effect on the construction of "[two] consecutive years," doing so would counsel that "any [two] consecutive years" means any two creditable years during the five-year look-back period (emphases added).  Id.  So construed, the anti spiking provision would mean that if, at any time in the five creditable years of service, the comparison of any two years within that range showed an annual salary that more than doubled, then the anti spiking provision would apply.
            The agencies rightly do not marshal such a construction; the Legislature intended the anti spiking provision to address a sudden spike in salary from one year to the next, not an increase in salary at any time during the look-back period.  Accordingly, while we agree with the DALA administrative magistrate that the "[five] consecutive years preceding retirement," which determine the pension calculation if the anti spiking provision is triggered, must refer to five creditable years of service immediately preceding retirement, whether contiguous years or not,[9] we disagree with his subsequent conclusion (unendorsed by the agencies themselves) that that construction has any bearing on the construction of the phrase "[two] consecutive years."  G. L. c. 32, § 5 (2) (a).
            The agencies also appear to adopt CRAB's independent basis for affirming DALA's decision, which posited that construing "[two] consecutive years" as back-to-back years was "illogical" because the look-back period -- the "[five] years of creditable service" immediately preceding retirement -- does not need to comprise back-to-back years.  See G. L. c. 32, § 5 (2) (a).  If none of those five years happens to abut, and if "consecutive" means two abutting years, then the anti spiking provision would not apply.  See id.  CRAB stated that this construction would "nullify" the legislative intent behind the anti spiking provision, but cited to nothing in the legislative record to support its position.  Indeed, PERAC acknowledged that it was unaware of any "information or data" regarding whether the practice of spiking took place in the Massachusetts public pension system "to any great extent"; rather, in adopting the provision, the Legislature was "follow[ing] the lead" of other jurisdictions that had enacted anti spiking legislation.  This representation by PERAC led the DALA administrative magistrate to disclaim reliance on any legislative record, as it was not clear that the anti spiking provision remedied any existing problem.  See, e.g., Hayon v. Coca Cola Bottling Co. of New England, 375 Mass. 644, 648 (1978) (intent of Legislature may be inferred from "examin[ing] the whole statute[,] with attention to . . . the evil to be remedied").
             Before the Superior Court, PERAC's position apparently changed; it argued that the anti spiking provision was intended, more broadly, "to prevent a huge increase in retirement benefits after a short time of service."  Even if PERAC's new position is supported, interpreting "consecutive" to mean back-to-back, consistent with its plain meaning and buttressed by its use and meaning in the first sentence of G. L. c. 32, § 5 (2) (a), achieves this purpose by focusing on spikes in salary between any two back-to-back years.  Indeed, given the word choice used by the Legislature, see discussion supra, it appears plain that this precisely is what the Legislature intended.  See Shabshelowitz v. Fall River Gas Co., 412 Mass. 259, 262 (1992) ("The language of the statute is the best indication of legislative intent").
            The agencies next appear to adopt the reasoning of the Superior Court judge, who put a premium on the first clause of the anti spiking provision -- namely, "[n]otwithstanding the previous sentence."  G. L. c. 32, § 5 (2) (a).  The judge contended that this introductory phrase evinced the Legislature's intent to use the words "consecutive years" in the anti spiking provision to mean something different than in the first sentence, which, as discussed supra, sets forth the bases for pension calculations when the anti spiking provision does not apply.  We disagree.  The introductory phrase "[n]otwithstanding the previous sentence" clearly means that the rules for calculation of pension payments in the preceding sentence do not apply where the condition presented by the subsequent sentence is triggered.  Id.  See Massachusetts Teachers' Retirement Sys. v. Contributory Retirement Appeal Bd., 466 Mass. 292, 298 (2013) (where language of statute is "plain," that "plain meaning" serves as "primary interpretive guide").  The phrase does not indicate that the Legislature was using the English language differently.
            The Superior Court judge also observed that the essence of the retirement law is that it is "founded on . . . years of creditable service."  See G. L. c. 32.  While true, it does nothing to suggest a different use of "consecutive years" in the anti spiking provision than in the standard calculation provision (the first sentence of the statute).[10]
            3.  Conclusion.  We affirm the judgment of the Superior Court in favor of Hartnett on grounds that the creditable years of 1990 and 2002 do not constitute "[two] consecutive years" within the meaning of the anti spiking provision.[11]  G. L. c. 32, § 5 (2) (a).  See Balles v. Babcock Power Inc., 476 Mass. 565, 579 n.21 (2017) ("appellate court[s are] free to affirm a ruling on grounds different from those relied on by the motion judge if the correct . . . basis for affirmance is supported by the record and the findings" [citation omitted]).
So ordered.
 
footnotes

 
            [1] Public Employee Retirement Administration Commission and Boston retirement system.
            [2] The Great Recession was an economic downturn and financial crisis that began in late 2007.  Commissioner of Admin. & Fin. v. Commonwealth Employment Relations Bd., 477 Mass. 92, 92 (2017).  Congressional Research Service, The 2007-2009 Recession:  Similarities to and Differences from the Past 1 (updated Oct. 6, 2010).
            [3] Pursuant to G. L. c. 32, § 3 (8), a member with service to both the State and Boston pension plans may combine their years of service to qualify for a retirement benefit.
            [4] In essence, G. L. c. 32, § 25 (5), "protects the 'core' of a member's 'reasonable expectations' of 'vested pension rights,'" and thus constrains the Commonwealth's ability to reduce a member's pension benefit.  State Bd. of Retirement v. Woodward, 446 Mass. 698, 706-707 (2006).
            [5] Specifically, G. L. c. 32, § 5 (2) (a), provides, in relevant part:
"The normal yearly amount of the retirement allowance . . . shall . . . be based on the average annual rate of regular compensation received by such member during any period of three consecutive years of creditable service for which such rate of compensation was the highest, or on the average annual rate of regular compensation received by such member during the period or periods, whether consecutive or not, constituting his last three years of creditable service preceding retirement, whichever is the greater" (emphases added).
As set forth above, where the anti spiking provision applies, the amount received by the member depends on the average annual amount of regular compensation for the final five years of creditable service.
            [6] The agencies agree that the term "consecutive years" in this portion of G. L. c. 32, § 5 (2) (a), refers to back-to-back years without interruption.  See Barnstable County Retirement Bd. vs. Public Employee Retirement Admin. Comm'n, Div. of Admin. Law Appeals, No. CR-11-151 (Jan. 9, 2015) (upholding PERAC's position that "three consecutive years of creditable service," as used in G. L. c. 32, § 5 [2] [a], refers to single period of contiguous creditable service); Ahern vs. Watertown Retirement Bd., Contributory Retirement Appeal Bd., No. CR-07-0423 (July 22, 2010) (interpreting same statutory phrase to mean "three successive periods of twelve[ ]months each").
            [7] Specifically, G. L. c. 32, § 5 (2) (a), provides, in relevant part:
"The normal yearly amount of the retirement allowance . . . shall be based on the average annual rate of regular compensation received by such member during any period of [five] consecutive years of creditable service for which such rate of compensation was the highest, or on the average annual rate of regular compensation received by such member during the period or periods, whether consecutive or not, constituting the member's last [five] years of creditable service preceding retirement, whichever is the greater" (emphases added).
            [8] Indeed, PERAC and CRAB agree that "[t]he foundation of a member's eligibility for a retirement benefit is the member's creditable years of service."
            [9] The Superior Court judge also relied on the phrase "[five] consecutive years preceding retirement," in support of the agencies' position, concluding that the phrase clearly meant five consecutive years of creditable service preceding retirement.  But that was not the agencies' position; rather, the agencies' position was that this phrase meant -- as the DALA administrative magistrate concluded -- the five years of creditable service preceding retirement, not five consecutive years of creditable service preceding retirement.
            [10] The Superior Court judge's conclusion that references to spans of time in the statute should necessarily include "only and all years when the employee was working in the pension system," while also true, is similarly unhelpful in determining the meaning of "consecutive years."  G. L. c. 32, § 5 (2) (a).  No party, for example, suggests that a member's pension should include time not spent in government service.
            [11] We do so on grounds different from those relied on by the Superior Court judge.  As discussed above, the judge granted judgment in favor of Hartnett on the basis of G. L. c. 32, § 25 (5), which creates a quasi contractual relationship between the State's public retirement system and its members.  See Madden v. Contributory Retirement Appeal Bd., 431 Mass. 697, 701 (2000).  Because we affirm on alternative grounds, we do not reach this issue.